3:23-mj-00083

DISTRICT OF OREGON, ss: AFFIDAVIT OF SAMUEL LANDIS

**Affidavit in Support of a Criminal Complaint and Arrest Warrant**

I, Samuel Landis, being duly sworn, do hereby depose and state as follows:

**Introduction and Agent Background**

1. I am a Special Agent with the Drug Enforcement Administration (DEA), and have been since March of 2016. I have previously worked in the Seattle Field Division, Tacoma Resident Office from 2016 to 2019 and in the Portland District Office from 2019 to 2022. Currently, I work in the Seattle Field Division, Salem Resident Office. Prior to my employment with the DEA, I worked as a Border Patrol Agent from November 2009 to March 2016. As a Special Agent of the DEA, my duties and responsibilities have included conducting criminal investigations for possible violations of federal law, particularly those found in Title 18 and Title 21 of the United States Code. I received formal training at the DEA Basic Agent Training Academy in Quantico, Virginia. The 22-week training included comprehensive, formalized instruction in, among other things: basic narcotic investigations, drug identification and detection, familiarization with United States narcotics laws, financial investigations and money laundering, identification and seizure of drug-related assets, organized crime investigations, physical and electronic surveillance, and undercover operations. In addition to Basic Agent Training, I have completed Money Laundering Training, Traps and Concealed Compartments Training, and other various courses that have familiarized me with investigations of drug trafficking organizations, methods of importation and distribution of controlled substances, and financial investigations.

2. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. The facts set forth

in this affidavit are based on my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers, interviews of witnesses, a review of records related to this investigation, communications with others who have knowledge of the events and circumstances described herein, and information gained through my training and experience.

3.   I submit this affidavit in support of a criminal complaint and arrest warrant for **Edilio Abimael GIRON-Rodas** for the crimes of Possession with Intent to Distribute 400 grams or more of a mixture and substance containing a detectable amount of fentanyl and 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, both Schedule II controlled substances, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(A). in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(A). As set forth below, there is probable cause to believe, and I do believe, that **Edilio Abimael GIRON-Rodas** violated 21 U.S.C. § 841(a)(1) and 841(b)(1)(A).

## Applicable Law

4.   Title 21, United States Code, Section 841(a)(1) prohibits the distribution and possession with the intent to distribute controlled substances, including fentanyl and methamphetamine, which are Schedule II controlled substances.

## Statement of Probable Cause

5.   On April 27, 2023, at approximately 9:00 a.m., Oregon State Police (OSP) Officer Brian Smith observed a 2004 Ford Explorer displaying California license plate "9FMC963" travelling north on Interstate-5 (I-5) near mile post 202. Officer Smith noted that when he initially got behind the Explorer, the vehicle pulled into a nearby rest stop (mile post 205). At the rest stop,

the vehicle stopped for roughly one minute before returning to north-bound travel on I-5. Officer Smith did not observe any occupants get in or out of the vehicle at the rest stop. In my experience, this behavior is consistent with a drug trafficker trying to avoid police presence. Officer Smith discontinued following the Explorer after a short while. He then passed along his observations to DEA Salem K-9 Task Force Officer (TFO) Adam Miller, who was positioned further north on I-5.

6. At approximately 9:44 a.m., TFO Miller observed the same Ford Explorer travelling north on I-5 in the area of milepost 257, which is located within Marion County, Oregon. TFO Miller subsequently stopped the Explorer in Marion County, Oregon after observing it commit a traffic violation. During the stop, TFO Miller noted there were shopping bags in the back seat of the vehicle. TFO Miller identified the driver as **Edilio Abimael GIRON-Rodas** via his Washington state identification card. TFO Miller identified the passenger as a juvenile person. **Edilio Abimael GIRON-Rodas** stated that the vehicle belonged to his brother in Oakland, California and said that he and the passenger were travelling from Oakland and to Bothell, Washington, where they live.

7. TFO Miller asked **Edilio Abimael GIRON-Rodas** if the vehicle contained any drugs. **Edilio Abimael GIRON-Rodas** admitted to a small amount of cocaine being inside the vehicle. **Edilio Abimael GIRON-Rodas** then showed TFO Miller the location of the suspected cocaine. TFO Miller then asked **Edilio Abimael GIRON-Rodas** and the passenger if there were any other hard drugs like fentanyl in the vehicle. **Edilio Abimael GIRON-Rodas** stated "I don't know." The juvenile passenger stated, "no." TFO Miller asked **Edilio Abimael GIRON-Rodas** for consent to search the Explorer. **Edilio Abimael GIRON-Rodas** provided TFO Miller verbal

and written consent to search the Explorer. TFO Miller also asked the passenger for consent to search the Explorer, to which the passenger verbally agreed.

8.      TFO Miller started his search by looking inside a shopping bag located in the back seat. Inside the bag TFO Miller located approximately 11.5 pounds (5,216 grams) of suspected powdered fentanyl, four (4) pounds (1,814 grams) of suspected methamphetamine, approximately 1,000 suspected fake oxycodone tablets believed to be manufactured with fentanyl, and a small user amount of cocaine. Much of the suspected fentanyl and methamphetamine was individually packaged in ounce-sized plastic baggies.  TFO Miller also located two scales.  The seized drugs are pictured below:







**Affidavit of Samuel Landis** **Page 5**

9. I recognized this type of packaging as consistent with preparation for further distribution. Some of the suspected fentanyl was brick-shaped and loosely contained within plastic bags. This is noteworthy because these loose fentanyl bricks did not have much containment for its dangerous residue/powder and because a juvenile person was present in the vehicle. The suspected fake oxycodone tablets – believed to contain fentanyl – were contained in two separate plastic baggies.

10. After locating the suspected drugs, TFO Miller read **Edilio Abimael GIRON-Rodas** and the juvenile person their *Miranda* Warnings and both individuals requested to have an attorney present before any questioning. **Edilio Abimael GIRON-Rodas** and the juvenile person were subsequently taken into custody and transported to the Oregon State Police Station in Salem for further processing. The suspected drugs were then seized. The suspected fentanyl, suspected cocaine, and suspected methamphetamine were later subject to field-tests. These field-tests provided presumptive positive results for the presence of each respective drug. All of these drugs are Schedule II controlled substances.

11. Based upon my training and experience, I know that approximately 11.5 pounds of fentanyl is not a user quantity, but rather indicates it is possessed for purposes of further distribution. Fentanyl is an extremely potent synthetic opioid that is approximately 100 times more powerful than morphine and 50 to 80 times more powerful than heroin. Two milligrams of fentanyl is a potentially lethal dose and it is normally used in extremely small quantities of less than this amount, either through inhaling the powder, burning the powder and inhaling the fumes, or being used to manufacture counterfeit prescription pain pills. Furthermore, the way the suspected fentanyl was packaged in ounce-sized plastic baggies, a common packaging amount for

subsequent sales, is indicative of possession with the intent to distribute. I know that, between larger dealers, a kilogram of fentanyl can sell for roughly $20,000 and approximately $900 per ounce. Given its valuable nature, drugs in large quantities such as this are not given or entrusted to unwitting individuals.

12. Moreover, in total, agents seized approximately four (4) pounds of methamphetamine from **Edilio Abimael GIRON-Rodas**. Through my training and experience, I know that methamphetamine is typically used in amounts of .1 to .2 of a gram and that users typically burn the methamphetamine and inhale the smoke. Approximately four pounds of methamphetamine is not a user quantity and indicates that it was possessed for purposes of further distribution. A pound of methamphetamine can sell, between larger distributors, for between $1,000 to $1,800 a pound. Additionally, much of the suspected methamphetamine was also packaged in ounce-sized individual baggies, a common packaging amount for subsequent sales, which also indicates to me that the methamphetamine was possessed for purposes of further distribution.

13. I also know that drug dealer use scales to weigh drugs prior to selling them as particular weights of drugs, whether a gram, an ounce, a pound or a kilogram all have different monetary values. The presence of scales in the vehicle also supports my view that the seized drugs were possessed for purposes of further distribution.

## Conclusion

14. Based on the foregoing, I have probable cause to believe, and I do believe, that on or about April 27, 2023, within the District of Oregon, **Edilio Abimael GIRON-Rodas** knowingly and intentionally Possessed with Intent to Distribute 400 grams or more of a mixture and substance

containing a detectable amount of fentanyl and 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, both Schedule II controlled substances, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(A). I therefore request that the Court issue a criminal complaint and arrest warrant for **Edilio Abimael GIRON-Rodas**.

15. Prior to being submitted to the Court, this affidavit, the accompanying complaint and the arrest warrant were all reviewed by Assistant United States Attorney (AUSA) Scott Kerin and AUSA Kerin advised me that in his opinion the affidavit and complaint are legally and factually sufficient to establish probable cause to support the issuance of the requested criminal complaint and arrest warrant.

/S/ *SAMUEL LANDIS*
SAMUEL LANDIS
Special Agent
Drug Enforcement Administration

Sworn in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at 5:55 p.m. on April 27, 2023.

_____
HON. STACIE F. BECKERMAN
United States Magistrate Judge